IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17-cr-94-1 |
| | ) | |
| WILLIAM ZACHARY WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Defendant William Zachary White ("White") is charged in a two-count Indictment with possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5861(d), 5871, and possession of three unregistered firearm silencers in violation of 26 U.S.C. §§ 5861(d), 5871. On May 15, 2017, White filed Defendant's Motion to Suppress Evidence, (ECF No. 14), and on June 8, 2017, the motion came on for hearing before the Court. White seeks to suppress the rifle and silencers that were seized from his home on grounds the seizure was in violation of the Fourth Amendment to the United States Constitution. Because the Government failed to establish by a preponderance of the evidence that the plain-view exception to the warrant requirement is applicable to the search and seizure of the rifle and silencers, White's motion to suppress is granted.

"In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)). At the June 8 hearing,

the Government called Sergeant Lynwood Hampshire ("Sgt. Hampshire") and Special Agent Cummings ("S.A. Cummings") as its witnesses, and White called Anita Holder as his sole witness. Based on the evidence presented, the Court makes the following:

## I. FINDINGS OF FACT

On or about August 22, 2016, Sgt. Hampshire, a 17-year veteran of the Reidsville Police Department, commenced an investigation regarding nine John Deere tractors that were stolen from Scott's Tractor in Rockingham County on August 21, 2016. About a month and a half later, on October 3, 2016, Sgt. Hampshire was notified that one of the stolen tractors was recovered in Durham County, North Carolina. The officer learned that the recovered tractor had been sold by White to David and Denise Terry of Durham on September 19, 2016. The Terrys, after purchasing the tractor, became suspicious that the tractor may have been stolen and contacted the Durham Police Department. At some point after November 2, 2016, Sgt. Hampshire interviewed the Terrys and obtained copies of texts between them and White. White's texts to the Terrys included a Vehicle Identification Number ("VIN") belonging to the lawn mower the Terrys purchased from White. The Terrys later located a different VIN on the tractor, which Sgt. Hampshire discovered matched the VIN of the lawn mower stolen from Scott's Tractor.

On November 9, 2016, at the request of Sgt. Hampshire, White voluntarily went to the Reidsville Police Department for an interview. Present at the interview along with White and Sgt. Hampshire was Officer Denny from the State Bureau of Investigation ("SBI). A limited portion of a recording of the November 9, 2016 interview was played at the hearing and received into evidence. According to Sgt. Hampshire, during the interview, White stated,

among other things, that he purchased the John Deere tractor from a gentleman in the parking lot of Sedgefield Lawn & Garden approximately two weeks before listing it for sale on Craigslist. On November 10, 2016, Sgt. Hampshire went to Sedgefield Lawn & Garden to investigate the statements made by White that he purchased the lawn mower in the parking lot of that establishment. Sgt. Hampshire concluded that the vehicle White described out of which he purchased the lawn mower would have impeded the parking lot of Sedgefield Lawn & Garden and further concluded that the establishment would not have allowed it to be there.

On March 5, 2017, Sgt. Hampshire applied for a warrant to search White's property[1] at 7102 Destiny Jo Road, Pleasant Garden, North Carolina.[2] The warrant was issued by a state court judge the same day. The state warrant sought evidence of the following state crimes: (1) obtaining property by false pretense in violation of N.C. Gen. Stat. § 14-100; (2) felony possession of stolen property in violation of N.C. Gen. Stat. § 14-71.1; and (3) alteration, destruction or removal of permanent identification marks from personal property in violation of N.C. Gen. Stat. § 14-160.1. (ECF No. 15-1 at 4, 12.)

The day following the issuance of the warrant, officers went to White's home at 7102 Destiny Jo Road to conduct the search. S.A. Cummings, a 15-year veteran of the SBI, testified

[1] When asked by the Court at the hearing why he waited until March to secure the search warrant from which this case arises, Sgt. Hampshire stated, "Guilford County[] . . . didn't want to deal with it. . . . My D.A. [Rockingham County] . . . didn't want it and eventually Alamance County . . . took it over. . . . I couldn't find a D.A. that was willing to prosecute it."

[2] Sgt. Hampshire applied for two warrants to search property of White. The one identified above as well as one for 6 Bitter Creek Lane, Greensboro, North Carolina. (ECF No. 15-1 at 16.) No evidence was presented related to the Greensboro residence.

he was present at the search and his duties that day were to document the crime scene in photographs, sketches, and in words to include in a report later. S.A. Cummings was directed to the master bedroom where Detective Ken Mitchell was already searching. When he walked into the bedroom, S.A. Cummings observed several firearms and other items that Detective Mitchell had found in different locations and spread onto the bed. S.A. Cummings observed two rifles that contained a collapsible stock, with one of the rifles having a longer barrel than the other. Comparing the two rifles, S.A. Cummings concluded one of the firearms was a short-barreled rifle. He further observed two modified "Maglite suppressors"[3] in an open gun case on the bed, and a third one in an open pocket of a gun bag. The suppressors had standard end caps that appeared to have been drilled out. S.A. Cummings seized the rifle and suppressors after viewing them. The day after the search law enforcement checked the national firearms registry and learned that White had not registered the rifle and silencers.[4] (ECF No. 15-1 at 41.)

On March 27, 2017, the Grand Jury returned an Indictment charging White in this Court with possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5861(d), 5871, and possession of three unregistered firearm silencers in violation of 26 U.S.C. §§ 5861(d), 5871. (ECF No. 9.)

---

[3] According to S.A. Cummings, the Maglite flashlights were "solvent traps," which are ordinarily used in the process of cleaning firearms, but were converted into firearm suppressors.

[4] According to Sgt. Hampshire's case supplemental report, which was attached to the Government's brief, "[t]he serial number on all of the firearms located [in White's home] were checked to ensure that they were not stolen." (ECF No. 17-1 at 9.) However, the report does not state why the officers believed the firearms may have been stolen.

## II. DISCUSSION

In deciding a motion to suppress, the defendant bears the burden of proving that suppression is proper. *Adkinson*, 191 F. Supp. 3d at 568 (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United States v. Gualtero*, 62 F. Supp. 3d 479, 482 (E.D. Va. 2014) (quoting *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974)).

White advances several arguments in support of his motion to suppress the rifle and silencers found in his home. He first challenges the validity of the search warrant, contending (a) the search and seizure were without probable cause because Sgt. Hampshire's warrant affidavit relies on stale information; (b) the warrant fails the particularity requirement because it is an impermissible general warrant; and (c) the affidavit in support of the warrant application includes a material misrepresentation or omission, requiring a *Frank's* hearing. Second, White contends that even if the warrant were valid, seizure of the rifle and suppressors were not authorized because the registration status of these items was not something immediately apparent to law enforcement under the plain-view doctrine.

### A. The Search Warrant

The Court first examines White's arguments that the search warrant was not based on probable cause because the evidence outlined in the application for the search warrant was stale and that the warrant was an impermissible general warrant in that it lacked the specificity required.

"The Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) be based upon probable cause supported by oath, and (3) contain a particular description of the place to be searched and things to be seized." *United States v. Cluthchette*, 24 F.3d 577, 579 (4th Cir. 1994). Evidence obtained in violation of these requirements is subject to exclusion at trial. *Id.* In this case, White does not contest that the warrant was issued by a neutral and detached judge. White does, however, contest whether the second and third elements have been satisfied.

Probable cause exists where, considering the totality of the circumstances, a person of reasonable prudence would believe that contraband or evidence of a crime will be found. *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011). "[T]he determination of probable cause by the magistrate who issued the warrant is entitled to 'great deference.'" *United States v. Randolph*, 261 F. App'x 622, 625 (4th Cir. 2008) (unpublished) (quoting *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990)). The reviewing court must only determine "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam). In making this determination, the reviewing court must consider "only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

1. *Staleness*

The Court considers White's argument that the affidavit in support of the search warrant fails to provide probable cause for the search because it was based on information that was four to six months old.

Evidence received from a warrant that relies on stale information is not admissible in a trial to establish a defendant's guilt. *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). "A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Id.* at 1335–36 (quotation omitted). According to the Fourth Circuit, staleness arises in two contexts. *Id.* at 1336. "First, the facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search." *Id.* Second, and relevant here, "the warrant itself may be suspect because the information on which it rested was arguably too old to furnish present probable cause." *Id.* (quotation omitted). To determine whether probable cause was ever present, the court cannot simply "count[] the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (quoting *McCall*, 740 F.2d at 1336). Rather, the court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *McCall*, 740 F.2d at 1336.

Here, White argues that paragraphs 1 through 9 of Sgt. Hampshire's warrant affidavit involve conduct related to White's acquisition and sale of the lawn mower in August and September 2016, some five to six months prior to the warrant being sought. He further argues that paragraphs 10 through 15 of the affidavit contain no dates and fail to demonstrate that there would be evidence present at White's home five to six months after the fact. Although the Government acknowledges the warrant's omission of relevant dates involving Sgt. Hampshire's investigation, it nevertheless urges the Court to reject White's staleness challenge,

contending that the warrant affidavit focused on the collection of documentary and electronic information that is not ordinarily destroyed or moved from one place to another.

The Fourth Circuit has recognized that "[f]indings of staleness become less appropriate when the instrumentalities of the alleged illegality tend to be retained." *United States v. Crowffey*, 183 F. App'x 249, 250 (4th Cir. 2006) (unpublished); *United States v. Farmer*, 370 F.3d 435, 439–40 (4th Cir. 2004) (holding that evidence was not stale even though events supporting probable cause took place nine months before search warrant was issued). Evidence not likely to become stale includes records of payment, bank statements, canceled checks, receipts, phone records, and electronic devices. *See Farmer*, 370 F.3d at 439–440; *United States v. Willis*, No. 13-CR-6013-FPG, 2015 WL 1915123, at *3 (W.D.N.Y. Apr. 27, 2015). These are the types of evidence the warrant sought to seize in this case. Moreover, paragraph 16 of Sgt. Hampshire's affidavit states that based on his training and experience, suspects often keep these types of evidence readily accessible in residences, vehicles, businesses, or on their person. (ECF No. 15-1 at 8.) Further, with respect to the omission of certain relevant dates, the affidavit does contain a number of investigatory steps Sgt. Hampshire undertook to determine White's involvement with the stolen tractor, albeit without the dates. These steps included visiting White's home, interviewing White, securing the Terrys statement regarding their transaction with White for the purchase of the lawn mower and what led to their suspicion that the lawn mower was stolen, as well as visiting Sedgefield Lawn & Garden. (*See id.* at 5–7.) While the omission of the relevant dates and the length of time that passed before securing the warrant

is indeed troublesome to this Court,[5] the issue is whether there is substantial evidence in the record to support the issuing judge's determination of probable cause at the time the warrant was issued. *See Upton*, 466 U.S. at 728. Considering all of the facts and circumstances, specifically the nature of the evidence to be seized in this case, and giving the issuing judge's determination great deference as required, this Court concludes that White's staleness argument must fail.

*2. The Particularity Requirement*

White next argues the warrant is an impermissible general warrant because it fails the particularity requirement of the Fourth Amendment. "General warrants . . . are prohibited by the Fourth Amendment." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). "The particularity requirement [of the Fourth Amendment] is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010). It "protects against general warrants that authorize 'exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized.'" *Id.* (quoting *Andresen*, 427 U.S. at 480). As such, when conducted pursuant to a warrant, the search must be "limited in scope by the terms of the warrant's authorization." *Id.* (quoting *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009)). In determining whether a

[5] The Fourth Circuit "has already cautioned the police about the need to specify time periods in warrant applications." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993); *see also United States v. Anderson*, 851 F.2d 727, 729–30 & n.1 (4th Cir. 1988) (noting the court was troubled by the fact that neither the warrant nor affidavit set forth relevant dates and emphasizing "that sloppily prepared or executed warrants directly affront the Fourth Amendment to the United States Constitution").

warrant is sufficiently particular, the court must avoid interpreting terms contained in the warrant in a "hypertechnical" manner. *Id.* Rather, the terms "should be read with a 'commonsense and realistic' approach, to avoid turning a search warrant into a 'constitutional strait jacket.'" *Id.* (quoting *Phillips*, 588 F.3d at 223).

Here, the warrant authorizes officers to search the "real property located at 7102 Destiny Jo Rd., its curtilage and any outbuildings." (ECF No. 15-1 at 1.) Further, the warrant affidavit in paragraphs 1 to 11 under the heading, "Property to be Seized," lists specific items of the property that are to be seized. (*See id.* at 4–5.) White takes issue with the language in paragraph 9, which states "[a]ny and all property belonging to the victim(s) and/or suspect(s) of this [sic] crimes." (*Id.* at 5.) He contends the broad language makes the warrant an unconstitutional general warrant. The Court shares White's concern regarding the broadness of this language because it would appear to give law enforcement authorization to search for all property belonging to the suspect(s) of the crime, *i.e.*, White. However, the Fourth Circuit has held that "a defective qualifying phrase will not defeat a warrant which is otherwise sufficiently specific." *United States v. Jacob*, 657 F.2d 49, 52 (4th Cir. 1981). So long as the warrant is "sufficiently particularized with respect to the items to be seized," courts will sever "the too general portion of the warrant from the sufficiently specific portion." *United States v. Prince*, 187 F.3d 632, 1999 WL 511003, at *6 (4th Cir. 1999) (unpublished table decision) (quoting *Jacob*, 657 F.2d at 52). While the language in paragraph 9 appears overly broad, the other 10 paragraphs under the section entitled, "Property to be Seized," outlines with specificity the types of evidence to be seized and connects the language to the alleged crimes under North Carolina law, *i.e.,* obtaining property by false pretense, felony possession of stolen

property, and alteration, destruction or removal of permanent identification marks from personal property. Thus, the Court concludes the warrant does not fail because of lack of particularity.[6] *See Williams*, 592 F.3d at 519 (explaining the particularity requirement is satisfied "when the warrant identifies the items to be seized by their relation to designated crimes").

*3. Frank's Hearing Request*

White next argues that the warrant affidavit contains an intentionally false and misleading statement or a statement made in reckless disregard for the truth, requiring a *Frank's* hearing. (ECF No. 15 at 16.) In *Franks v. Delaware*, the United States Supreme Court set forth a two-step process for defendants to challenge the veracity of a warrant affidavit. 438 U.S. 154, 155–56 (1978); *accord United States v. Clenney*, 631 F.3d 658, 663 (4th Cir. 2011). First, the defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks*, 438 U.S. at 155–56. "This showing 'must be more than conclusory' and should include affidavits or other evidence to overcome the 'presumption of [the warrant's] validity.'" *Clenney*, 631 F.3d at 663 (alteration in original) (quoting *Franks*, 438 U.S. at 171). Second, the defendant must clear an additional hurdle at the hearing:

[6] This Court may have very well reached a different conclusion if the Government had sought to justify its search and seizure based on paragraph 9, particularly since paragraph 11 of the affidavit appears to seek the same evidence except that paragraph 11 specifically limits its language to the crimes involved in this case. The inclusion of paragraph 9 was totally unnecessary. However, as this Court concludes, it does not destroy the entire warrant based on the facts of this case.

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 156. "A warrant that violates *Franks* is not subject to the good-faith exception to the exclusionary rule . . . ." *United States v. Colkley*, 899 F.3d 297, 300 (4th Cir. 1990).

White contends paragraph 14 of the warrant affidavit includes an intentionally false and misleading statement or a statement made in reckless disregard for the truth. The Court agrees.

Paragraph 14 of the warrant affidavit states, in relevant part:

> During the interview William White made the comment "he was here to talk about the mower he stole[.]" He immediately recanted the stole to say sold.

(ECF No. 15-1 at 7.) Upon review of the video recording introduced at the hearing, the Court concludes that this statement in the warrant was so totally taken out of context that it was intentionally misleading and demonstrates a reckless disregard for the truth. The relevant portion of the video of White's interview with Sergeant Hampshire and Agent Denny demonstrates the following:

> Denny: Has [Sgt. Hampshire] explained to you why we're here today?
>
> White: He told me [pause] he told me a lawn mower I stole… was stole. First he told me I stole it . . . it was stolen. But . . . uh . . . he told me it was stolen.

| | |
|---|---|
| Denny: | Okay, alright. Do you remember selling [inaudible] |
| White: | I guess I'll have to explain to you guys I flip stuff. So you'll have to be |
| Denny: | [interrupts] Ok |
| White: | [continues] . . . very specific with me. Houses, cars, lawn mowers, you name it. I do it all so you have to be extremely specific with me. |
| Denny: | Okay. |

(Government Ex. 4.)

Not only is the statement in paragraph 14 of Sgt. Hampshire's warrant affidavit not a direct quote from White, the recording makes clear that White was responding to the question that was posed to him by Agent Denny about whether he knew the basis for the interview. No reasonable person would conclude that White's statement was anything other than a response to Agent Denny's question. Moreover, Sgt. Hampshire testified during the hearing that he had called White the day before and left a message. Specifically, Sgt. Hampshire testified, "I originally told [White] that I needed him to come in to speak to me about the lawn mower that he had stolen and then I said sold." Clearly, White was responding not only to Agent Denny's question, but was sharing what Sgt. Hampshire had said to him in the message the day before. Nothing that happened during the interview on November 9, 2016 could reasonably be interpreted as supporting the officer's statement that "During the interview William White made the comment 'he was here to talk about the mower he stole.' He immediately recanted this stole to say sold." (ECF No. 15-1 at 7.) There is little question that the statement made by Sgt. Hampshire characterizing his interview with White was intended to mislead the judge into believing White had admitted to stealing a tractor and further had

recanted that admission. Further, there is no question that the statement in paragraph 14 would compel a judge to find probable cause under the circumstances of this case. Thus, Sgt. Hampshire's inclusion of the statement outlined in paragraph 14 was reckless in that it was without basis, was misleading, and further it was material to the state court's finding of probable cause. The Court concludes that White has made the substantial preliminary showing that he is entitled to a *Frank's* hearing; however, in light of the fact that the motion to suppress will be granted on other grounds, such a hearing is unnecessary at this time.

**B. The Plain-View Doctrine**

White's final argument for suppression is that the lawfulness of the rifle and silencers was not readily apparent to officers seizing them and thus the plain-view doctrine should not apply. It is undisputed that the search warrant in this case does not specifically authorize the search or the seizure of the rifle and silencers found in White's home. (*See* ECF No. 15 at 2; ECF No. 17 at 32 & n.9.) Therefore, the Court must determine whether an exception to the warrant requirement is applicable here. The Government contends that the seizure of these items is permissible under the plain-view doctrine. The Court concludes, however, that the Government has failed to carry its burden of demonstrating the plain-view exception to the warrant requirement is applicable here and, thus, White's motion to suppress must be granted.

Police may seize evidence in plain view without a warrant if "(1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character [is] . . . immediately apparent." *Williams*, 592 F.3d at 521 (alteration in original) (internal quotation marks and quotation omitted). Under the plain-view exception to the

warrant requirement, the search and seizure of contraband must be supported by probable cause. *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987). The government bears the burden of proving that the plain-view exception to the warrant requirement applies. *See United States v. Davis*, 690 F.3d 226, 233, 236 n.16 (4th Cir. 2012).

Here, the Government contends that seizure of the rifle was justified because the incriminating character of the short-barreled rifle and modified suppressors was immediately apparent to S.A. Cummings. (*See* ECF No. 17 at 32–34, 35.) However, it is undisputed that S.A. Cummings was not the officer that conducted the search of the area in which the short-barreled rifle and suppressors were originally found. S.A. Cummings testified that when he entered the master bedroom, he observed the short-barreled rifle and two suppressors lying in a gun case on the bed. The third suppressor, according to S.A. Cummings, was lying open in another gun case, likewise on the bed. S.A. Cummings testified that he did not observe Detective Mitchell, who was in the room when he entered, move any of the items from their original location; nor could he tell the Court why Detective Mitchell needed to move these items from their original location to the bed. *See Hicks*, 480 U.S. at 324–27 (moving equipment unrelated to the search authorization to observe serial number constituted a separate "search" that needed to be supported by probable cause). While "the mere observation of an item in plain view does not implicate the Fourth Amendment during the course of a lawful search," *Williams*, 592 F.3d at 521, movement and manipulation of that object does constitute a search that must be supported by probable cause, *see Hicks*, 480 U.S. at 324–25. The Government presented no evidence regarding the circumstances involving the search and the subsequent removal of the firearm and suppressors from their original location, which occurred before

S.A. Cummings entered the room and viewed the items lying on the bed. This Court therefore cannot evaluate the Government's assertion that the items were in plain-view when discovered, or whether the original seizure was valid. The location of the rifle and silencers when S.A. Cummings observed them does not, in any way, assist the Court in determining whether the search and initial seizure were constitutionally valid. S.A. Cummings was not in any position to determine whether the items were in plain view.

Moreover, the Government presented no argument as to how the rifle and silencers present in White's home would be an immediately apparent violation of the statute prohibiting the possession of unregistered firearms. S.A. Cummings testified that possession of the short-barreled rifle and the modified silencers was not *per se* illegal if properly registered. Nor did S.A. Cummings testify that he had probable cause to believe these items were unregistered. On these facts, the Government has failed to carry its burden of demonstrating the incriminating character of the rifle and silencers was immediately apparent. *See United States v. Holmes*, 36 F. Supp. 3d 970, 977 (D. Mont. 2014) (stating the government "present[ed] no argument as to how a silenced pistol stored without the registration paperwork constitut[ed] an immediately apparent violation of the statute proscribing unregistered silencers" and thus

the government "had no reliable basis—much less one that was immediately apparent—from which to conclude that the silencer was unregistered").[7]

Based on the evidence presented, the Government has failed to carry its burden of establishing that the search and seizure of the items in question fell within the plain-view exception to the warrant requirement. Thus, the Court concludes the rifle and silencers must be suppressed.

The Fourth Amendment of the United States Constitution requires that individuals must be protected, particularly in their homes, from unreasonable searches and seizures. When it appears that law enforcement treats this sacred constitutional right as nothing more than an impediment to making their case, we all lose.

For the reasons outlined herein, the Court enters the following:

[7] The Government cites a number of cases to support its argument that seizure of the rifle and silencers was justified under the plain-view doctrine. However, neither case is from the Fourth Circuit; nor does the Court find them persuasive based on the evidence presented by the Government in this case. In *United States v. Weinbender*, an officer was conducting a search where he observed and then seized what he believed was a pipe bomb, which turned out later to be a homemade silencer. 109 F.3d 1327, 1330 (8th Cir. 1997). In *United States v. Naugle*, the Tenth Circuit, in holding an officer had probable cause to seize a sawed-off shotgun under the plain-view doctrine, recognized possession of a sawed-off shotgun is not per se illegal, but then stated, without citing any support, that such possession is the rare case. 997 F.2d 819, 823 (10th Cir. 1993). The Seventh Circuit in *United States v. Carmany* upheld the seizure of a silencer under the plain-view doctrine because there was evidence the officer observed no serial numbers on the silencer and thus concluded it was contraband. 901 F.2d 76, 78 (7th Cir. 1990). In *United States v. Cecil*, officers went to a residence known to officers as being the headquarters of a "militant organization" to arrest individuals named in an arrest warrant when they saw the defendant, who was not named in the arrest warrant, come to the front door with a sawed-off shot gun in his hand. 457 F.2d 1178, 1179–80 (8th Cir. 1972).

**ORDER**

IT IS THEREFORE ORDERED that White's Motion to Suppress (ECF No. 14) is GRANTED.

This, the 19th day of June, 2017.

/s/ Loretta C. Biggs
United States District Judge